IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:23-CR-332

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| ANDRE DURON ROBINSON, ) | |
| ) | |
| Defendant. ) | |

On October 18, 2023, a grand jury indicted Andre Duron Robinson ("Robinson" or "defendant") on three counts: (1) possession with intent to distribute 50 grams or more of methamphetamine in violation of 21 U.S.C. § 841(a)(1); (2) possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A); and (3) possession of a firearm by a felon in violation of 18 U.S.C. §§ 922(g)(1) and 924. See [D.E. 1, 2]. On September 4, 2025, Robinson moved to suppress the evidence discovered in his car during a traffic stop on August 8, 2023 [D.E. 52]. On September 18, 2025, the United States responded in opposition [D.E. 55]. On February 6, 2026, the court held a hearing on the motion to suppress.

The court has considered the evidence and governing law. The court credits the testimony of the two police officers at the traffic stop and finds that the police had reasonable suspicion to stop Robinson's car and had probable cause to search Robinson's car. Thus, the court denies the motion to suppress.

I.

On August 8, 2023, Officer Hall and Sergeant Dixon responded to a call for service at the Super 8 Motel on Cedar Creek Road in Fayetteville, North Carolina. After finishing the call, Officer Hall drove his marked patrol car out of the parking lot and noticed a black Mercedes-Benz

SUV ("Mercedes"). Officer Hall believed the Mercedes was traveling above the posted speed limit of 45 miles per hour, but the Mercedes slowed down substantially once it passed Sergeant Dixon, who was driving her marked patrol car.

Officer Hall ran the Mercedes's license plate in the database and found that the vehicle's owner, Kalena Rogers, had a suspended license. Officer Hall did not notice on his computer that Kalena Rogers was a female. Officer Hall could not tell whether the driver was a male or female due to the Mercedes's window tint and the midnight darkness. Officer Hall then turned on his blue lights and initiated a traffic stop on the Mercedes. Officer Hall called in the traffic stop, telling dispatch that he was pulling over an "unknown occupant."

Sergeant Dixon provided back up for Officer Hall and pulled her patrol car in behind Officer Hall's patrol car. Officer Hall approached Robinson's Mercedes on the driver's side while Sergeant Dixon approached on the passenger side. As Officer Hall approached, Robinson stuck his hand out the window and gave Officer Hall his license. Officer Hall credibly testified that Robinson was nervous and that Officer Hall observed Robinson's hands shaking and his carotid artery pulsing. Officer Hall told Robinson that he pulled Robinson over because the registered owner has an indefinitely suspended license. Robinson told Officer Hall that he was the registered owner now and had recently resolved the issues with his registration.

Officer Hall and Sergeant Dixon walked back towards Officer Hall's patrol car. Sergeant Dixon told Officer Hall she smelled marijuana emanating from the Mercedes. Officer Hall had not smelled marijuana on his initial approach but stated that the smell of marijuana provided probable cause to search the Mercedes. The officers reapproached the Mercedes and asked Robinson if there were any weapons or drugs in the vehicle, to which Robinson told them there were not. Sergeant Dixon then asked Robinson if they could search the vehicle, and Robinson said

2

no. The officers then asked Robinson to exit the vehicle so Officer Hall and Sergeant Dixon could conduct a probable cause search of the Mercedes.

Robinson refused to exit the Mercedes and became agitated and verbally combative. After attempting to deescalate the situation for a few minutes, Sergeant Dixon and Officer Hall opened the driver's door of the Mercedes to remove Robinson. Once the door was open, Officer Hall could smell the odor of marijuana. For the next five minutes, Sergeant Dixon and Officer Hall attempted to persuade Robinson to step out of the Mercedes so that they would not have to remove him. Robinson remained agitated and verbally combative. Ultimately, the officers removed Robinson from the vehicle. Once Robinson was out of the vehicle, Sergeant Dixon saw a handgun protruding from under the driver's seat. Meanwhile, Robinson continued to resist and delay the officers' investigation by refusing to comply with the officers' commands.

After securing Robinson, Officer Hall and Sergeant Dixon searched the Mercedes. Under the driver's seat, Officer Hall and Sergeant Dixon located a loaded Walther .380 caliber handgun and a bag of approximately 8.28 grams of cocaine and 9.58 grams of crack. In the backseat, Officer Hall and Sergeant Dixon located 1.49 pounds of marijuana. The marijuana was in a large plastic bag. On the rear passenger floorboard, Officer Hall and Sergeant Dixon located a black drawstring bag containing 164.79 grams of methamphetamine, 14.5 grams of fentanyl, a digital scale, and United States currency. Robinson was arrested and charged with numerous state drug distribution offenses and with being a felon in possession of a firearm. See [D.E. 14] 7.

II.

Robinson argues that Officer Hall lacked reasonable suspicion to stop the Mercedes. The court finds that Officer Hall had reasonable suspicion to stop the vehicle.

3

The Fourth Amendment provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. Temporary detention of an individual during a traffic stop constitutes a seizure. See Whren v. United States, 517 U.S. 806, 809–10 (1996); see also United States v. Arvizu, 534 U.S. 266, 273 (2002); United States v. Hill, 852 F.3d 377, 381 (4th Cir. 2017); United States v. Williams, 808 F.3d 238, 245 (4th Cir. 2015); United States v. Digiovanni, 650 F.3d 498, 506 (4th Cir. 2011), abrogated on other grounds by Rodriguez v. United States, 575 U.S. 348 (2015). An officer may stop and briefly detain a person for investigative purposes when there is "reasonable suspicion," based on articulable facts, that criminal activity is afoot. See Illinois v. Wardlow, 528 U.S. 119, 123–24 (2000); United States v. Sokolow, 490 U.S. 1, 7 (1989); Terry v. Ohio, 392 U.S. 1, 30 (1968). Reasonable suspicion is a lower bar than probable cause. Whether there is reasonable suspicion depends on the totality of the circumstances, including information known to the officer and any reasonable inferences to be drawn at the time of the stop. See Arvizu, 534 U.S. at 273; United States v. Foster, 824 F.3d 84, 89 (4th Cir. 2016). "This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." Arvizu, 534 U.S. at 273 (quotations and citation omitted); see United States v. Lender, 985 F.2d 151, 154 (4th Cir. 1993). So long as "the circumstances, viewed objectively, justify [the officer's] action[s]," the officer's subjective motivation for the traffic stop is irrelevant. Whren, 517 U.S. at 813 (citation omitted); see Ohio v. Robinette, 519 U.S. 33, 38 (1996); United States v. McDonald, 61 F.3d 248, 254 (4th Cir. 1995), overruled in part on other grounds by United States v. Wilson, 205 F.3d 720 (4th Cir. 2000); United States v. Hassan El, 5 F.3d 726, 730 (4th Cir. 1993).

4

In Kansas v. Glover, 589 U.S. 376 (2020), a deputy sheriff ran a license plate check on a truck and discovered that the truck belonged to Glover and that Glover's driver's license was revoked. See id. at 379. The deputy "assumed the registered owner of the truck was also the driver," so the deputy conducted a traffic stop on the truck. See id. Glover filed a motion to suppress all evidence seized during the stop, arguing that the deputy lacked reasonable suspicion for the stop. See id. at 378–79. The Supreme Court held that stop was justified because the deputy "drew the commonsense inference that Glover was likely the driver of the vehicle." Id. at 381. The deputy's inference, the court explained, "provided more than reasonable suspicion to initiate the stop." Id. The Supreme Court also noted that the presence of additional facts in the case could have dispelled reasonable suspicion. For example, "if an officer knows that the registered owner of the vehicle is in his mid-sixties but observes that the driver is in her mid-twenties, then the totality of the circumstances would not 'raise a suspicion that the particular individual being stopped is engaged in wrongdoing.'" Id. at 386 (citation omitted). The Court explained, however, that the deputy "possessed no exculpatory information . . . and thus the stop was justified. Id.

As in Glover, Officer Hall ran the license plate, discovered that the Mercedes's owner, Rogers, had an indefinitely suspended license, and made the "commonsense inference" that the owner was the "unknown occupant" driving the vehicle. See id. at 381. Officer Hall had no exculpatory information about the driver, such as Robinson's sex, to dispel the reasonable suspicion that the owner was driving the Mercedes with a suspended license. See id. at 379. Thus, Officer Hall had "more than reasonable suspicion to initiate the stop." Id. at 381. Furthermore, when Robinson claimed to be the registered owner while handing his driver's license to Officer Hall, Officer Hall continued to have reasonable suspicion to investigate whether Robinson was the

5

registered owner and whether Robinson had a valid driver's license. See Wardlow, 528 U.S. at 123–24; Sokolow, 490 U.S. at 7; Terry, 392 U.S. at 30.

III.

Robinson argues that Officer Hall and Sergeant Dixon lacked probable cause to search the Mercedes. The court finds that the officers had probable cause to search the Mercedes.

The "touchstone" of the analysis "under the Fourth Amendment is always the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security." Pennsylvania v. Mimms, 434 U.S. 106, 108–09 (1977) (per curiam) (quotations and citation omitted). A search pursuant to a valid warrant is reasonable. The Fourth Amendment, however, "does not specify when a search warrant must be obtained." Kentucky v. King, 563 U.S. 452, 459 (2011). Although warrantless searches are "presumptively unreasonable," id. (citation omitted), courts have recognized "categories of permissible warrantless searches." Fernandez v. California, 571 U.S. 292, 298 (2014); see King, 563 U.S. at 459; Flippo v. West Virginia, 528 U.S. 11, 13–14 (1999) (per curiam); Mimms, 434 U.S. at 108–09; Katz v. United States, 389 U.S. 347, 357 & n.19 (1967). The automobile exception occupies one of these categories. See Maryland v. Dyson, 527 U.S. 465, 466–67 (1999) (per curiam); United States v. Ross, 456 U.S. 798, 809 (1982); Carroll v. United States, 267 U.S. 132, 149 (1925); United States v. Caldwell, 7 F.4th 191, 200 (4th Cir. 2021).

The automobile exception "allows police to conduct a warrantless search of a readily mobile vehicle if they have probable cause to do so." Caldwell, 7 F.4th at 200; see Dyson, 527 U.S. at 467. Probable cause "exist[s] where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found." Ornelas v. United States, 517 U.S. 690, 696 (1996); Caldwell, 7 F.4th at 200. "Probable

6

cause is not a high bar." District of Columbia v. Wesby, 583 U.S. 48, 57 (2018) (citation omitted); see Moretti v. Thorsdottir, 157 F.4th 352, 364 (4th Cir. 2025) ("The probable cause bar is a low one . . . ."). For example, in a state like North Carolina where it is illegal to possess marijuana, an officer's detection of the odor of marijuana emanating from a vehicle establishes probable cause to search the vehicle. See United States v. White, 836 F.3d 437, 441–43 (4th Cir. 2016) (affirming that probable cause existed to search vehicle based on odor of marijuana emanating from the vehicle), abrogated on other grounds by United States v. Stitt, 586 U.S. 27 (2018); United States v. Lewis, 606 F.3d 193, 198 (4th Cir. 2010) (same); United States v. Humphries, 372 F.3d 653, 658 (4th Cir. 2004) (same); United States v. Carter, 300 F.3d 415, 422 (4th Cir. 2002) (per curiam) (same).

Here, the officers had probable cause to search Robinson's vehicle. The court credits Sergeant Dixon's testimony at the suppression hearing that she smelled the odor of unburnt marijuana emanating from Robinson's Mercedes upon her initial approach. As discussed, upon his initial approach, Officer Hall noticed Robinson was nervous—his hands were shaking, and his carotid artery was pulsing. Sergeant Dixon was on the Mercedes's passenger side while Officer Hall spoke with Robinson and obtained Robinson's driver's license. After Officer Hall and Sergeant Dixon walked back towards Officer Hall's patrol car, Sergeant Dixon told Officer Hall that she smelled the odor of marijuana emanating from within the Mercedes. Under North Carolina General Statute § 90-95(a)(3), it is a crime to knowingly possess marijuana. See N.C. Gen. Stat. §§ 90-94(b)(1), 90-95(a)(3). Officer Hall said that he did not smell marijuana but told Sergeant Dixon that they should "pull [Robinson] out" if she smelled the marijuana odor. Sergeant Dixon then said, "You can't do it on smell alone, right?" Officer Hall assured Sergeant Dixon that the smell alone from within the Mercedes sufficed to establish probable cause. He was correct. See,

7

e.g., White, 836 F.3d at 441–43; Lewis, 606 F.3d at 198; Humphries, 372 F.3d at 658; Carter, 300 F.3d at 422.

As discussed, Sergeant Dixon and Officer Hall reapproached the Mercedes and asked Robinson if there were any weapons or drugs in the vehicle. Robinson told them there were not. Sergeant Dixon then asked Robinson if they could search the vehicle, and Robinson said no. Robinson was then asked to exit the vehicle so Officer Hall and Sergeant Dixon could conduct a probable cause search of the Mercedes. The officers permissibly asked Robinson to exit the vehicle. See, e.g., Mimms, 434 U.S. at 110–11.

Robinson refused to exit the Mercedes. After a couple minutes, Sergeant Dixon and Officer Hall opened the driver's door of the Mercedes to remove Robinson. Officer Hall then smelled marijuana inside the vehicle. For the next five minutes, Sergeant Dixon and Officer Hall attempted to persuade Robinson to step out of the Mercedes. The officers finally removed Robinson from the Mercedes. But once outside, Robinson continued to resist and delay the officers' investigation by refusing to comply with the officers' commands.

Once the officers secured Robinson, Officer Hall and Sergeant Dixon searched the Mercedes. Under the driver's seat, Officer Hall and Sergeant Dixon located a loaded Walther .380 caliber handgun and a bag of approximately 8.28 grams of cocaine and 9.58 grams of crack. In the backseat, Officer Hall and Sergeant Dixon located 1.49 pounds of marijuana in a large plastic bag. On the rear passenger floorboard, Officer Hall and Sergeant Dixon located a black drawstring bag containing 164.79 grams of methamphetamine, 14.5 grams of fentanyl, a digital scale, and U.S. currency.

Sergeant Dixon's testimony about the marijuana odor emanating from within the Mercedes was credible. That Officer Hall did not initially smell the marijuana does not undermine Sergeant

Dixon's testimony. Sergeant Dixon had more experience and training concerning narcotics (including the smell of unburnt marijuana) than Officer Hall. Moreover, once Officer Hall permissibly opened the door to remove Robinson and before the officers searched the Mercedes, Officer Hall also smelled unburnt marijuana emanating from within the Mercedes. Here, probable cause existed to search Robinson's Mercedes. See, e.g., White, 836 F.3d at 441–43; Lewis, 606 F.3d at 198; Humphries, 372 F.3d at 658; Carter, 300 F.3d at 422. Thus, the court denies Robinson's motion to suppress.

## IV.

In sum, Officer Hall had reasonable suspicion to conduct a traffic stop. Moreover, Officer Hall and Sergeant Dixon had probable cause to search defendant's vehicle. Thus, the court DENIES defendant's motion to suppress [D.E. 52].

SO ORDERED. This 11 day of February, 2026.

JAMES C. DEVER III
United States District Judge